IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ANA SANCHEZ-REYES**, on behalf of herself and all other employees similarly situated, known and unknown,<br><br>  Plaintiff,<br>v.<br><br>**A&R SCREENING, LLC**, an Illinois not-for-profit corporation, and **JO-ELLEN DORZANO**, individually,<br><br>  Defendants. | Civil Action<br><br><br><br>No.<br><br><br><br><br>JURY DEMAND |

## COMPLAINT

By and through her attorneys of record and on behalf of himself and all other employees similarly situated, known and unknown, the plaintiff, ANA SANCHEZ-REYES (the "Plaintiff"), hereby complains of the defendants, A&R SCREENING, LLC, ("A & R"), an Illinois not-for-profit corporation, JO-ELLEN DORZANO, individually, (collectively the "Defendants"). Pleading hypothetically and in the alternative, the Plaintiff alleges as follows:

**I.  INTRODUCTION**

1. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., as a result of the Defendants' failure to pay certain overtime compensation to the Plaintiff, and to other similarly situated employees of the Defendants (the "Collective Class"). The Plaintiff worked in excess of 40 hours per week for the Defendants during certain weeks, but the Defendants failed and refused to pay her time-and-one-half overtime compensation for some of the hours she worked in excess of 40 as the FLSA requires. Upon information and belief, the Defendants failed and refused to pay the

Collective Class members time-and-one-half overtime compensation for some of the hours they worked in excess of 40 as well during certain weeks. In Count I, the Plaintiff brings a claim pursuant to Section 216(b) of the FLSA.

2. In Count II the Plaintiff brings a supplemental claim under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*.

3. In Count III, the Plaintiff brings a supplemental claim for violation of the Illinois Whistleblower Act, 740 ILCS 174/20.

4. In Count IV, the Plaintiff brings a claim under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq*.

5. In Count V, the Plaintiff brings a common law retaliatory discharge claim.

## II. THE PARTIES

6. The Plaintiff is an individual domiciled within Illinois and resides within the Northern District of Illinois.

7. JO-ELLEN DORZANO is an individual who, upon information and belief, is domiciled in Illinois and resides within the Northern District of Illinois.

8. A&R SCREENING, LLC is an Illinois corporation that maintains its registered office and principal place of business at or near 8417 S. Beloit, Bridgeview, IL 60455.

9. At all times relevant to this action, JO-ELLEN DORZANO is/was a member, manager or officer of A & R.

10. At all times relevant to this action, JO-ELLEN DORZANO exercises/exercised significant control over A & R's day-to-day operations.

11. At all times relevant to this action, JO-ELLEN DORZANO exercises/exercised significant control over A & R's human resources and payroll functions.

12. At all times relevant to this action, JO-ELLEN DORZANO was the Plaintiff's supervisor and/or manager.

13. At all times relevant to this action, JO-ELLEN DORZANO was/is the Collective Class members' supervisor and/or manager.

14. At all times relevant to this action, JO-ELLEN DORZANO had the power to: a) hire and fire the Plaintiff; b) set the Plaintiff's work schedule; c) set the Plaintiff's rate of pay; d) define the Plaintiff's job duties; and e) direct the particulars of the Plaintiff's work.

15. At all times relevant to this action, JO-ELLEN DORZANO had/has the power to: a) hire and fire the members of the Collective Class; b) set the Collective Class members' work schedules; c) set the Collective Class members' rates of pay; d) define the Collective Class members' job duties; and e) direct the particulars of the Collective Class members' work.

## III. JURISDICTION AND VENUE

16. Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

17. Supplemental jurisdiction over the Illinois statutory claims alleged herein is conferred on this Court by 28 U.S.C. § 1367(a).

18. Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within this judicial district.

19. Venue is proper as A & R maintains its principal place of business within the Northern District of Illinois.

## IV. STATUTORY CONSENT

20. The Plaintiff brings this case as a collective action under the FLSA on behalf of herself and the Collective Class, and in accord with Section 16(b) of the FLSA, the Plaintiff has given written consent to bring such an action (attached as **Exhibit A**).

## V. GENERAL ALLEGATIONS

21. At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

22. At all times relevant to this action, the Defendants are/were the Collective Class members' "employer" within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants act/acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

23. At all times relevant to this action, the Defendants were the Plaintiff's "employer" within the meaning of Section 3(c) of the IMWL in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the Plaintiff, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

24. Upon information and belief, A & R had gross receipts in excess of $500,000.00 in: a) 2007; b) 2008; c) 2009; d) 2010; and e) 2011.

25. At all times relevant to this action, the Defendants operated, controlled and/or constituted an "enterprise" within the meaning of Section 3(r) of the FLSA (the "Enterprise").

26. At all times relevant to this action, the Enterprise operated a silk screening business within the Northern District of Illinois.

27. Upon information and belief, the Enterprise may operate, and may have operated, additional establishments in Illinois.

28. At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

29. At all times relevant to this action, the members of the Collective Class are/were "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

30. At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(d) of the IMWL.

31. During the course of her employment by the Defendants, the Plaintiff handled goods that moved in interstate commerce including but not limited to cleaning solvents, dyes and inks, and textiles.

32. During the course of their employment by the Defendants, the Collective Class members handled/handle goods that moved in interstate commerce including but not limited to cleaning solvents, dyes and inks, and textiles.

33. During the course of their employment by the Defendants, the Plaintiff and the Collective Class members are/were not exempt from the overtime wage and minimum wage provisions of the FLSA.

34. During the course of their employment by the Defendants, the Plaintiff and the Collective Class members are/were not exempt from the overtime wage and minimum wage provisions of the IMWL.

35. The Plaintiff was employed by the Defendants from about September, 2001, to about April, 2010.

36. The Defendants routinely and as a matter of practice and policy required the Plaintiff to work more than 40 hours per week, but then failed and refused to pay her overtime compensation at the requisite statutory rates for certain hours.

37. Upon information and belief, the Defendants routinely and as a matter of practice and policy required the Collective Class members to work more than 40 hours per week, but then failed and refused to pay them overtime compensation at the requisite statutory rates for certain hours.

38. As part of a scheme to conceal their violation of the FLSA, the Defendants would sometimes pay the Plaintiff and the Collective Class members for a small number of overtime hours at the time-and-one-half rate, while requiring them to work the remainder of their overtime hours off-the-books.

39. The Defendants often required the Plaintiff to work "off-the-books" on weekends – paying her for certain weekend hours on the books, but not all, in an attempt to conceal the practice.

40. When the Plaintiff worked on the weekends for the Defendants, she would typically observe about 4 Collective Class members working for the Defendants.

41. Upon information and belief, the Defendants often required the Collective Class members to work "off-the-books" on weekends – paying them for certain weekend hours on the books, but not all, in an attempt to conceal the practice.

42. The Defendants can likely point to records that appear to show the Plaintiff and the Collective Class members did receive *some* overtime compensation at the time-and-one-half rate; but, this is part of the Defendants' deliberate scheme to conceal their failure to pay proper overtime compensation.

43. The Defendants paid the Plaintiff in cash for the off-book hours she worked on weekends, and sometimes failed to pay her at all for the off-book hours she worked on weekends.

44. For example, the Plaintiff might have actually worked 50 hours in one week, for which the Defendants might have paid her on-the-books for 42 hours, at the straight rate for 40 hours and at the time-and-one-half rate for two hours. Then, in that same week for the remaining 8 hours, the Defendants might pay the Plaintiff: a) in cash at the rate of one-and-one-quarter times her straight hourly rate; b) in cash at her straight hourly rate; or c) nothing at all.

45. When the Defendants paid the Plaintiff in cash as described above, it was always either at the Plaintiff's straight hourly rate, or at the rate of one-and-one-quarter times the Plaintiff's straight hourly rate.

46. The hours for which the Defendants would pay the Plaintiff in cash as described above were usually overtime (greater than 40 in a given week) hours and, therefore, the Defendants should have paid the Plaintiff at a rate not less than one-and-one-half times the Plaintiff's straight hourly rate.

47. On several occasions during her employment, the Plaintiff complained to JO-ELLEN DORZANO about not receiving proper overtime compensation for some of the weekend hours that she worked, to which complaints JO-ELLEN DORZANO replied with words the same as or similar to "What do you care? It's cash. You don't have to pay taxes on it, so it's the same thing as normal overtime."

48. On several occasions during her employment, the Plaintiff overheard members of the Collective Class make the same or similar complaints to JO-ELLEN DORZANO, and the Plaintiff overheard JO-ELLEN DORZANO respond to them with the same or similar words.

## COUNT I
### (Violation of the FLSA)

49. The Plaintiff hereby re-alleges the foregoing allegations.

50. The Defendants violated the FLSA by failing to pay the Plaintiff for certain overtime (in excess of 40 in a given workweek) hours at a rate equal to or greater than one-and-one-half times the regular rate at which she was employed.

51. Upon information and belief, the Defendants also violated the FLSA by failing to pay the Collective Class members for certain overtime (in excess of 40 in a given workweek) hours at a rate equal to or greater than one-and-one-half times the regular rates at which they are/were employed.

52. The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

53. The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

54. The Defendants' practice or requiring the Plaintiff to work off the books on weekends, and paying the Plaintiff in cash for some of those hours, evidences the Defendants' knowing and willful violation of the FLSA.

WHEREFORE, on behalf of herself and the Collective Class, the Plaintiff prays for judgment in her favor and against the Defendants, and each of them, and for the following relief:

    A. damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the plaintiffs at a rate equal to or greater than one and one-half times the regular rate at which the plaintiffs were employed (in no case less than one and one-half times the IMWL's mandatory minimum rate);

    B. statutory liquidated damages as allowed by the FLSA;

    C. interest on all amounts awarded;

    D. attorneys' fees, together with costs of suit and collection;

    E. such further relief as may be fair and just in the premises.

## COUNT II
### (Violation of the IMWL)

55. The Plaintiff hereby re-alleges the foregoing allegations.

56. The Defendants violated the IMWL by failing to pay the Plaintiff for certain overtime (in excess of 40 in a given workweek) hours at a rate equal to or greater than one and one-half times the regular rate at which she was employed.

57. The Defendants were aware or should have been aware of its obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

58. The Defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

59. The Defendants' practice or requiring the Plaintiff to work off the books on weekends, and paying the Plaintiff in cash for some of those hours, evidences the Defendants' knowing and willful violation of the IMWL.

WHEREFORE the Plaintiff prays for judgment in her favor and against the Defendants, and each of them, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiff for each hour the Plaintiff worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiff at a rate equal to or greater than one and one-half times the regular rate at which the Plaintiff was employed (in no case less than one and one-half times the IMWL's mandatory minimum rate);

B. statutory punitive damages as allowed by the IMWL;

C. interest on all amounts awarded;

D. attorneys' fees, together with costs of suit and collection; and

E. such further relief as may be fair and just in the premises.

## COUNT III
### (Common Law Retaliatory Discharge)

60. The Plaintiff hereby re-alleges the foregoing allegations.

61. In about September, 2009, the Defendants fired the Plaintiff's co-worker, Magdalena Aranefi.

62. Subsequent to the termination of her employment, Magdalena Aranefi filed for unemployment compensation benefits.

63. Upon information and belief, Magdalena Aranefi also filed a charge of discrimination with the Equal Employment Opportunity Commission and/or the Illinois Department of Human Rights.

64. In about December, 2009, JO-ELLEN DORZANO asked the Plaintiff to sign and attest to a statement that the Defendants had prepared (the "Statement").

65. The Statement was part of the Defendants' attempt to defeat Magdalena Aranefi's application for unemployment compensation benefits.

66. Upon information and belief, the Statement was also part of the Defendants' attempt to defend themselves against the charge of discrimination filed by Magdalena Aranefi.

67. However, significant portions of the Statement were false.

68. The Plaintiff refused to sign the Statement because significant portions of it were false.

69. On or about January 5, 2010, the Plaintiff testified truthfully, and contrary to significant portions of the Statement, in a telephonic hearing conducted by the Illinois Department of Employment Security.

70. When the Plaintiff refused to sign the Statement, she believed that to do so would be a crime – perjury.

71. The Plaintiff's belief, as described above, was reasonable.

72. On or about April 6, 2010, the Defendants fired the Plaintiff.

73. The Defendants had no legitimate or lawful reason to fire the Plaintiff.

74. Shortly before the Defendants fired the Plaintiff, JO-ELLEN DORZANO made derogatory comments to the Plaintiff regarding the Plaintiff's decision to testify truthfully in the telephonic hearing referenced above.

75. Shortly before the Defendants fired the Plaintiff, JO-ELLEN DORZANO made derogatory comments to the Plaintiff regarding the Plaintiff's refusal to sign the Statement.

76. The Defendants fired the Plaintiff in retaliation for her refusal to sign the Statement and in retaliation for her decision to testify truthfully in the telephonic hearing referenced above.

77. When the Defendants fired the Plaintiff, they failed and refused to pay her for 32 days of vacation time she had accrued.

78. This vacation pay constitutes regular wages to which the Plaintiff is entitled under the IWPCA by virtue of the course of dealing between the Plaintiff and the Defendants, *i.e.*, the Defendants and their predecessors had always allotted vacation pay to the Plaintiff her co-workers according to a certain policy (the "Policy"); and, the Defendants' failure to pay the Plaintiff's accrued vacation pay was violation of this policy.

79. Any alleged, formal changes to the Policy were: a) made after the Plaintiff's vacation pay had already accrued under the existing Policy; b) were never made known to the Plaintiff or her co-workers at any time before April 6, 2010; and c) were never published to the Plaintiff or her co-workers at any time before April 6, 2010.

80. The Defendants failed to pay the Plaintiff for the 32 vacation days she had accrued, to which she is entitled under the IWPCA, in retaliation for her refusal to sign the

Statement and in retaliation for her decision to testify truthfully in the telephonic hearing referenced above.

81. The Defendants' firing of the Plaintiff was willful and wanton, and was enacted with malicious disregard for the Plaintiff's rights.

82. As a direct and proximate result of the Defendants' wrongful firing of the Plaintiff, the Plaintiff has sustained damages including but not limited to lost wages.

83. As a direct and proximate result of the Defendants' wrongful firing of the Plaintiff, the Plaintiff has sustained damages including but not limited to pain, suffering, and emotional distress.

WHEREFORE, the Plaintiff prays for judgment in her favor and against the Defendants, and each of them, and for the following relief:

A. make-whole damages including but not limited to reinstatement, back pay and front pay in lieu of reinstatement;

B. compensatory damages;

C. punitive damages in an amount no less than three times any award of compensatory damages, back pay and front pay;

D. interest on all amounts awarded;

E. attorneys' fees, together with costs of suit and collection; and

F. such further relief as may be fair and just in the premises.

## COUNT IV
### (Violation of the Illinois Whistleblower Act)

84. The Plaintiff hereby re-alleges the foregoing allegations.

85. The Defendants' retaliatory firing of the Plaintiff was in violation of the Illinois Whistleblower Act.

WHEREFORE, the Plaintiff prays for judgment in her favor and against the Defendants, and each of them, and for the following relief:

A. make-whole damages including but not limited to reinstatement, back pay and front pay in lieu of reinstatement;

B. compensatory damages;

C. punitive damages in an amount no less than three times any award of compensatory damages, back pay and front pay;

D. interest on all amounts awarded;

E. attorneys' fees, together with costs of suit and collection; and

F. such further relief as may be fair and just in the premises.

## COUNT V
### (Violation of the IWPCA)

86. The Plaintiff hereby re-alleges the foregoing allegations.

87. The Plaintiff brings this Count as an opt-in representative action under Section 11 of the IWPCA on behalf of herself and the Collective Class.

88. The Defendants violated the IWPCA by:

   a. failing to pay the Plaintiff for accrued vacation hours upon the termination of the Plaintiff's employment;

   b. failing to pay the Plaintiff certain wages either weekly or biweekly; and/or

   c. failing to pay the Plaintiff certain wages within either 7 days of the close of each relevant workweek, or within 13 days of the close of each relevant biweekly pay-period; and

   d. failing to pay the Plaintiff certain wages altogether by requiring her to work "off-the-books" on certain weekends.

89. Upon information and belief, the Defendants violated the IWPCA by:

   a. failing to pay some of the Collective Class members for accrued vacation hours upon the termination of the their employment;

   b. failing to pay the Collective Class members certain wages either weekly or biweekly; and/or

   c. failing to pay the Collective Class members certain wages within either 7 days of the close of each relevant workweek, or within 13 days of the close of each relevant biweekly pay-period; and

   d. failing to pay the Collective Class members certain wages altogether by requiring them to work "off-the-books" on certain weekends.

WHEREFORE, on behalf of herself and the Collective Class, the Plaintiff prays for judgment in her favor and against the Defendants, and each of them, and for the following relief:

A. damages in an amount equal to the unpaid wages (including but not limited to minimum wages, regular wages, overtime compensation and accrued vacation pay) due and owing to the plaintiffs for each hour the plaintiffs worked but for which the Defendants failed to pay the plaintiffs at a rate equal to the regular rate at which the plaintiffs were employed (and as applicable, one-and-one-half times the regular rate at which the plaintiffs were employed – for those hours over 40 in any given workweek);

B. an order commanding the Defendants to pay the plaintiffs any all unpaid wages (including but not limited to minimum wages, regular wages, overtime compensation and accrued vacation pay) due and owing to the plaintiffs for each hour the plaintiffs worked, but for which the Defendants failed to pay the plaintiffs at a rate equal to the regular hourly rate at which the plaintiffs were employed (and as applicable, one-and-one-half times the regular rate at which the plaintiffs were employed – for those hours over 40 in any given workweek);

C. interest on all amounts awarded;

D. attorneys' fees, together with costs of suit and collection; and

E.  such further relief as may be fair and just in the premises.

## JURY DEMAND

The Plaintiff demands trial by jury of all issues set forth herein that are capable of being tried by a jury.

| | |
|---|---|
| Roy P. Amatore, Esq.<br>Paul Luka, Esq.<br>AMATORE & ASSOCIATES, P.C.<br>120 S. State Street · Suite 400<br>Chicago, IL 60603<br>312.236.9825 | Respectfully submitted,<br><br> /s/Paul Luka<br>One of the Plaintiff's Attorneys |

# EXHIBIT A

## **CONSENT TO BE A PARTY PLAINTIFF**

The undersigned hereby authorizes and engages Amatore & Associates, P.C., to pursue her claims for unpaid wages, and other relief, against A & R SCREENING, LLC, and any other persons who may have employed her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown.

_____
Ana Sanchez Reyes